UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In Re Dykeswill, Ltd., | § | |
|     Debtor | § | C.A. No. 04-20974 |
| | § | |

| | | |
|---|---|---|
| Ben Floyd, J. Mitchell Clark | § | |
|     Appellants, | § | |
| | § | |
| v. | § | C.A. No.02:06-cv-233 |
| | § | |
| Dykeswill, Ltd., | § | |
| Waiono Plantation, Inc., | § | |
|     Appellees. | § | |

## **OPINION AND ORDER TO REMAND**

This is an appeal from the Bankruptcy Court's denial of an application to compromise. Ben Floyd, the trustee in bankruptcy, and J. Mitchell Clark who previously represented Waiono Plantation, Inc., submitted for approval to the Bankruptcy Court a compromise of a claim Clark maintains against his former client Waiono Plantation, Inc. The Bankruptcy Court denied approval and Floyd and Clark appealed.

Having considered the record and legal arguments, the Court reverses the Bankruptcy Court's order and remands the matter for reconsideration.

### **I. Facts**

In June 2003 Waiono Plantation, Inc., hired attorney J. Mitchell Clark to file suit against Dykeswill, Ltd. for claims arising out of a land transaction in Kona,

Hawaii.  Clark and WPI executed a written contingency fee contract, which stated that "in consideration of [Clark's] legal services, [WPI] hereby assigns and grants [Clark] 50% of any recovery that is made whether it be money, property, tangible or intangible rights, constructive trusts or other monetary benefit or thing of value . . . ."  On behalf of his client WPI, Clark promptly filed suit against Dykeswill in Nueces County, Texas.  In December 2003 Clark successfully negotiated a settlement of WPI's suit against Dykeswill.  In exchange for WPI dismissing its claims with prejudice, Dykeswill agreed to pay WPI $1.5 million within 150 days of the settlement.  To secure its promise to pay, Dykeswill also conveyed to WPI a mortgage on the Hawaiian property.  The mortgage was properly delivered and recorded.  Clark was not named on the mortgage or property records.

 Dykeswill ultimately failed to pay the $1.5 million.  On May 13, 2004, the 150-day period of repayment expired.  Two months later, on July 26, 2004, Dykeswill filed for Chapter 11 bankruptcy.  WPI and Clark each filed a proof of claim as secured creditors in Dykeswill's bankruptcy proceeding.  Clark claimed a 50% interest in WPI's gross recovery under the settlement contract, and a 50% interest in the Hawaiian real property.

On August 29, 2005, Ben Floyd (the trustee) filed an adversary proceeding against both WPI and Clark, seeking to avoid the mortgage as a preference or fraudulent transfer.  With the Bankruptcy Court's permission, the trustee then sold the Hawaiian property, satisfied a senior mortgage interest, and put the $1.62 million

balance of the sale proceeds in a separate account. The Bankruptcy Judge ordered that Clark's and WPI's claims to the Hawaiian real property—based on their claimed ownership of the mortgage—would attach to these proceeds pending the outcome of the trustee's avoidance contest. There are no other claims or liens on these proceeds. WPI claims an interest as a creditor. The trustee seeks to avoid Clark's and WPI's claims to the proceeds for the benefit of the bankruptcy estate.

With the avoidance contest looming, Clark and the trustee reached a compromised in January of 2006. Clark agreed to give up his claim to 50% of the sale proceeds in exchange for $160,000.00. Under Federal Rule of Bankruptcy Procedure 9019(a), the trustee filed an application to compromise with the Bankruptcy Court. WPI objected. After hearing arguments, the Bankruptcy Court denied the application.

The Bankruptcy Court held that "Clark's claim for payment of his contingent fee [had] not ripened into an equitable interest or lien because of the intervening bankruptcy." The Court ruled the compromise was not fair and equitable because of the possibility of Clark, the attorney, recovering a contingency fee, while his former client WPI might ultimately loose the avoidance contest and recover nothing. The Bankruptcy Court also denied the application to compromise because it found "Clark's attempt to settle with the Trustee apart from WPI may constitute a breach of the [attorney-client contingency fee] contract" and act as a res judicata bar in a later breach of contract action.

Appellants Clark and the trustee now argue, as a matter of law, that the

Bankruptcy Judge incorrectly concluded that Clark's claim has not ripened into an equitable interest or lien because of the intervening bankruptcy. They argue that the authority cited in the Bankruptcy Judge's order does not support his conclusion. The also argue the Bankruptcy Judge's ruling that the proposed settlement may violate the terms of the attorney-client contract is clearly erroneous as a matter of fact or wrong as a matter of contract law.

Appellees argue Clark has no ownership interest to settle because no recovery has been received by WPI and because Clark is not listed on the mortgage records. They argue the Bankruptcy Judge did not abuse his discretion in determining the proposed compromise was not fair or equitable.

## II.  Standard of Review

A bankruptcy court's order approving or denying a compromise involving a bankruptcy estate is reviewed for abuse of discretion. *Jackson Brewing Co. v. Herpel*, 624 F.2d 599, 602–03 (5th Cir. 1980).  However, "an abuse of discretion standard does not mean a mistake of law is beyond appellate correction." *Southwest Livestock and Trucking Co., Inc. v. Ramon*, 169 F.3d 317, 321 n.3 (5th Cir. 1999). The bankruptcy court's legal conclusions are subject to de novo review, while its findings of fact may not be set aside unless clearly erroneous. *Matter of Foster Mortg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). In reviewing an approval or denial of a compromise, the appellate court must assure that the compromise is truly "fair and equitable" and "in the best interest of the estate." *Id.*

### III. Discussion

A. Clark's interest in the mortgage

An attorney's right to compensation pursuant to a contingency fee agreement is a property right determined by Texas state law. *Marre v. US*, 117 F.3d 297, 307 (5th Cir. 1997). In Texas, prior to settlement or final judgment, a contingency fee agreement is an executory contract. *Id.; Carroll v. Hunt*, 168 S.W.2d 238, 240 (Tex. Comm'n App. 1943, opinion adopted); *Brenan v. LaMotte*, 441 S.W.2d 626, 630 (Tex. Civ. App.—San Antonio 1969, no writ). The attorney does not receive a legal or equitable interest pursuant to a contingency fee contract until the contingency occurs. *Mare*, 117 F.3d at 307; *Missouri Pac. R.R. Co. v. Austin*, 292 F.2d 415, 419 (5th Cir. 1961); *Lee v. Cherry*, 812 S.W.2d 361, 363 (Tex. App.—Houston [14th Dist.] 1991, writ denied); *Carroll*, 168 S.W.2d at 241; *White v. Brookline Trust Co.*, 371 S.W.2d 597, 600 (Tex. Civ. App.—Amarillo 1963, writ ref'd n.r.e.); *Brenan*, 441 S.W.2d at 630.

Under Texas Law on contingency fee contracts, the contingency occurs as soon as there is a final judgment or settlement. *Marre*, 117 F.3d at 308 n.19; *In re Willis*, 143 B.R. 428, 431 (Bank. E.D. Tex. 1992); *see also Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d 318, 325 n.16 (5th Cir. 2006) (noting that "[s]ettlement agreements waiving substantial rights of parties and compromising a disputed liability are as conclusive as judgment following full litigation"). Once there is settlement, the agreement is executed, and the attorney is vested with an interest. *Willis*, 143 B.R. at

431–32; *Marre*, 117 F.3d at 308 n.19; *see also Dow Chemical v. Benton*, 357 S.W.2d 565, 568 (Tex. 1962) (stating that an attorney's interest in a contingency fee contract becomes independent at the severing of the agency relationship).

The nature of the attorney's vested interest depends upon the language of the contingency fee agreement. The language may create an equitable assignment, giving an interest in the recovery itself, or an equitable lien, which is a lien on the recovery. An equitable assignment occurs where the agreement contains "a constructive appropriation of funds that confers upon the attorney a present right to the funds without further intervention of the client." *Carroll*, 168 S.W.2d at 241. An equitable lien occurs where the agreement indicates intention to make some particularly described property a security for obligation. *Patterson v. Citizen's Nat'l Bank of Lubbock*, 236 S.W. 130, 131 (Tex. Civ. App.—Amarillo 1921, no writ); *Ingresoll v. Coram*, 211 U.S. 335, 368 (1908) (applying Massachusetts common law property doctrines).

To determine whether a contract creates an equitable assignment, Texas courts look for words of present conveyance and the client's relinquishment over some portion of the recovery. *Carroll*, 168 S.W.2d at 241. The term "hereby assigns" constitutes a present assignment. *Id.* Whether the client relinquishes some portion of the recovery is also determined by the precise language of the contract. *Id.*[1] The interest created by

---

[1]. *Carroll* involved a contingency fee agreement to contest a will and obtain property from the estate of a deceased person. The Court found there was no relinquishment because the

6

an equitable assignment is one of vested ownership, rather than just a lien or claim. *Northern Tex. Traction Co. v. Clark & Sweeton*, 272 S.W. 564, 568 (Tex. Civ. App.—Texarkana 1925, no writ). This is why a defendant who pays a judgment in full without accounting for the contingency fee claim may sometimes have to pay the fee portion twice. *Madeskho v. Abraham, Watinks Nichols and Friend*, 112 S.W.3d 679, 689 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Clark's interest is based in the attorney-client contract. This contract states WPI "assigns and grants" 50% of any recovery of any thing of value. This is language of present conveyance. *Carrol*, 168 S.W.2d at 241. By the terms of the contract, the WPI gave up control over the portion assigned to Clark, and was not just promising to pay. *Id.* The contingency executing the agreement, and thus vesting Clark with his interest, occurred when WPI settled its claims against Dykeswill in December of 2003. *Marre*, 117 F.3d at 308 n.19; *Willis*, 143 B.R. at 431–32.

At the time of settlement, there was a definite recovery—Dykeswill granted WPI a mortgage and executed a promise to pay. Even apart from the promise to pay, the mortgage conveyed at this settlement is an intangible right and independently has value. Indeed, mortgages are commonly sold on secondary markets. The very reason the trustee can seek to avoid the mortgage under § 547 is because the granting of the

---

contract provided that a fair valuation would be made later, and that at the time of recovery the attorneys and the client would agree whether the fee would be paid in cash or in kind property from the estate. *Carroll*, 168 S.W.2d at 241.

mortgage was a transfer of value.

Appellee argues, as a matter of Texas professional responsibility law, that a lawyer cannot recover under a contingency fee contract until his client recovers, and so the proposed compromise was unlawful. *Levine v. Bayne, Snell & Krause*, 40 S.W.3d 92, 94 (Tex. 2001) (citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 35 (1998)); *Dow Chemical*, 357 S.W.2d 565. Relying on a recent tax decision from the United States Supreme Court, appellee also insists that a contingent fee lawyer is not a joint owner of his client's claim, and thus Clark cannot have any rights independent of WPI's rights. *Commissioner of Internal Revenue v. Banks*, 543 U.S. 426 (2005).

Appellee reads *Levine* to require the client obtain a *monetary* recovery before the lawyer can be paid. This is not so. *Levine* simply requires that the attorney recover only when and to the extent the client does. *Levine*, 40 S.W.3d at 94–95. Here, WPI recovered a mortgage. The attorney-client contract covered far more than just monetary recovery, but also extended to "intangible rights" such as a mortgage.

Appellee and the Bankruptcy Court also misplace reliance on *Banks*. *Banks* was about the income tax implications of a lawyer's interest in his client's claims. Here, Clark is *not* arguing that he has an ownership interest in WPI's claims. WPI's claims that relate to Clark's interest were dismissed with prejudice in Nueces County Texas at the settlement of WPI's claims against Dykswill. Clark is asserting, under the attorney-client contract, a claim to the mortgage WPI recovered at settlement. It is this

claim to the mortgage—Clark's own, and not his former client's—that Clark sought to compromise with the trustee. Most significantly, the language in *Banks* to which appellee refers has to do with an attorney's rights in his client's claim *before* settlement or final judgment—the point at which Texas law executes the contingency. *See Banks*, 543 U.S. at 436–37 (quoting Judge Posner's analogy of a commission salesman's interest in his employer's accounts receivables). This case involves the attorney's interest in his own claims *after* the settlement of the matter for which he was retained.

The fact that Clark's name was not on the mortgage record does not change the result. His property rights arise from the attorney-client contract. The language of this contract created an equitable assignment. *Carrol*, 168 S.W.2d at 241. At the time of settlement, the contingency occurred and Clark was vested with an equitable ownership interest in the mortgage. *Willis*, 143 B.R. at 431–32; *Marre*, 117 F.3d at 308 n.19. Until the filing of the bankruptcy petition, Clark could have sued on the attorney-client contract in a Texas court to have his claim reduced to a monetary judgment. While Clark's equitable interest may ultimately be invalidated by the trustees avoidance powers, at the time of the application for compromise Clark had a vested ownership interest.

The Bankruptcy Judge's conclusion that Clark's interest had not yet vested is REVERSED.

### B.  The proposed compromise as a potential breach of attorney-client contract

The Bankruptcy Judge also concluded that the attempt to settle with the trustee

9

may have constituted a breach of the attorney-client contract.  The Bankruptcy Court reasoned that allowing the compromise might provide a res judicata defense in any later action for breach. At least in part for this reason, the Bankruptcy Court ruled the compromise was not fair and equitable.

Unambiguous contracts are construed as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Pratt-Shaw v. Pilgrim's Pride Corp*., 122 S.W.3d 825, 829 (Tex. App—Dallas 2003, no pet.). The entire instrument, taken by its four corners, must be read and considered to determine the true intention of the parties. *Pratt-Shaw*, 122 S.W.3d at 829. Courts give terms their plain meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Res., Inc. v. Nations Bank*, 939 S.W.2d 118, 121 (Tex.1996); *Pratt-Shaw*, 122 S.W.3d at 829.

As discussed above, Clark seeks to settle his own claim to the recovered mortgage.  The attorney-client contract language requiring the consent of the client prior to the settling of claims unambiguously refers to WPI's claims against Dykeswill. These claims are the purpose of the contract and form the basis of the attorney-client relationship.  The term "claims" is defined in the contract itself as claims against Dykeswill arising out the Hawaiian land transaction.  Applying the Texas law of contract construction, the consent requirement has nothing to do with Clark's claim to the mortgage, and the proposed compromise is not a breach of the attorney-client agreement.  The Bankruptcy Court is REVERSED on this matter of law.

### C. Fairness and Equity of the Compromise

In reviewing an approval or denial of a compromise, the duty of an appellate court is to determine whether the compromise is "fair and equitable" and "in the best interest of the estate." *Matter of Foster Mortg. Corp.*, 68 F.3d at 917. The governing factors which a bankruptcy court must consider when deciding to approve or deny an application to compromise are (1) the probability of success in litigation, with due consideration for the uncertainty of the facts and law; (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise. *Id.*

Because some of the Bankruptcy Court's legal conclusions reversed by this order impacted that Court's analysis of the application to compromise, this Court remands the application for reconsideration consistent with this opinion. The Bankruptcy Court remains in the best position to consider all factors bearing on the wisdom of the compromise, and to determine whether it is fair, equitable, and in the best interest of the estate. *Id.*

The Bankruptcy Court's order denying the motion to compromise is REVERSED. The matter is REMANDED to the Bankruptcy Court for reconsideration consistent with this opinion.

Ordered this 28th day of March, 2007.

_____
HAYDEN HEAD
CHIEF JUDGE